# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**In the Matter of:**

**RESTRAINT OF ONE VESSEL KNOWN AS THE "MSC GAYANE"**

: **MISCELLANEOUS CASE**

:

: **No. 19-MC-_____**

### CONSENT ORDER

This matter having come before the Court on the uncontested Motion of the United States (also referred to herein as the "government") to release property subject to alleged forfeiture, namely, one vessel known as the "MSC Gayane," the Court finds the following:

1.      The government alleges that on June 17, 2019, agents and officers from Homeland Security Investigations, U.S. Customs and Border Protection, United States Coast Guard, Pennsylvania State Police, Delaware State Police, Philadelphia Police Department, and others, conducted an enforcement boarding of the motor vessel known as the "MSC Gayane," Call Sign Number D50Z5, IMO Number 9770763 ("Defendant Vessel"), at Packer Marine Terminal in Philadelphia, Pennsylvania. The Defendant Vessel arrived in Philadelphia on the morning of June 17, 2019, from Freeport, Bahamas, laden with commercial cargo, destined for the United States and elsewhere. The government alleges that, upon conducting a lawful search of the Defendant Vessel, agents and officers discovered and ultimately seized approximately 19.76 tons of cocaine concealed within numerous, separate shipping containers.

2.      The government alleges that there is probable cause to believe that the Defendant Vessel was used to transport and facilitate the transportation and possession of illicit controlled substances which had been manufactured, distributed, dispensed, or acquired in violation of 21

U.S.C. §§ 841 and 846, was used to commit, or to facilitate the commission of an offense under 46 U.S.C. § 70503, and represents a conveyance used as a common carrier which had prohibited merchandise on board ("Alleged Violations").

3. The government alleges that Defendant Vessel is therefore subject to seizure and forfeiture pursuant to 19 U.S.C. § 1594(c), 18 U.S.C. § 981(b), 21 U.S.C. § 881(a)(4), and 46 U.S.C. § 70507.

4. On July 4, 2019, the U.S. Customs and Border Protection executed a warrant to seize the Defendant Vessel for forfeiture ("Seizure Warrant").

5. The government further alleges that the Court is authorized to enter a restraining order or protective order pursuant to 18 U.S.C. § 983(j), because the Defendant Vessel is alleged to be subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(4), and 46 U.S.C. § 70507.

6. MSC Mediterranean Shipping Company S.A., a foreign company, with offices and a place of business at 12-14 Chemin Rieu, 1208- Geneva, Switzerland, is and was at all relevant times the time charterer and commercial operator of the Defendant Vessel under applicable United States law. MSC Mediterranean Shipping Company USA Inc., a U.S. corporation with offices in New York and South Carolina, is and was at all relevant times the U.S.-based ship and commercial agent for MSC Mediterranean Shipping Company S.A.

7. Conglomerate Maritime Limited, a foreign company, with a registered office at Nerine House, St. George's Place, St. Peter Port, Guernsey, is and was at all relevant times the bareboat charterer (and thereby the disponent owner) of the Defendant Vessel responsible for, among other things, the technical operation and management of the Defendant Vessel. Mediterranean Shipping Company S.R.L., a foreign company with an office in Sorrento, Italy,

and MSC Shipmanagement Limited, a foreign company with an office in Limassol, Cyprus, are and/or were at all relevant times involved with the technical and crewing management for Conglomerate Maritime Limited.

8.     Meridian 7 Limited, a company registered in Bermuda, located at Canon's Court, 22 Victoria Street, Hamilton HM12, Bermuda, is and was at all relevant times the registered owner of the Defendant Vessel, which it has bareboat chartered (on a non-operating finance lease basis) with the benefit of a purchase option to Conglomerate Maritime Limited.

9.     MSC Mediterranean Shipping Company S.A., Conglomerate Maritime Limited, and Meridian 7 Limited seek the release of the Defendant Vessel alleging that retention of the property pending forfeiture would result in, among other things, extreme commercial prejudice and other hardship to MSC and Meridian 7 Limited. MSC Mediterranean Shipping Company S.A., MSC Mediterranean Shipping Company USA Inc., Conglomerate Maritime Limited, Mediterranean Shipping Company S.R.L., and MSC Shipmanagement Limited, hereinafter will be referred to as "MSC" to the extent that any particular company is relevant to the provision.

10.     The government, MSC, and Meridian 7 Limited, through their authorized counsel, have agreed to release the Defendant Vessel to MSC pending completion of any civil and criminal forfeiture proceedings relating to the Defendant Vessel in accordance with the below terms and conditions. Unless otherwise provided in this Consent Order, MSC and Meridian 7 Limited reserve any and all rights, defenses, and remedies with respect to any such proceeding(s).

11.     MSC agrees to facilitate interviews of any officer or crewmember of the Defendant Vessel and of any officer or employee of MSC at the time such a request is made by the United States. MSC agrees to assist the United States in effecting proper service of process

with respect to any Alleged Violations, on any officer, crewmember, and employee of MSC, including when the officer, crewmember, and employee are not in the United States at the time the subpoena is issued, in a manner consistent with U.S. laws and the laws of the foreign country where the individuals and entities are located. MSC further agrees to cooperate with the United States to arrange for testimony of such officer, crewmember, or employee before a Grand Jury or other judicial or administrative proceeding arising from the Alleged Violations. The United States agrees that MSC does not exercise complete control over its officers, crewmembers, and employees; therefore, MSC's obligations with respect to such individuals shall include: (i) encouraging the officers, crewmembers, and employees to cooperate with the United States in carrying out its investigation and in appearing for their scheduled testimony; (ii) assisting the officers, crewmembers, and employees with their travel arrangements; and (iii) refraining from taking any disciplinary measures or initiating legal proceedings or any other retaliatory actions as a result of the officer's or crewmember's or other employee's cooperation with the United States, either now or at any time in the future. MSC further will make reasonable efforts to prevent third parties, namely manning or other crewing agencies, from doing the same. The United States agrees that it will provide reasonable notice of its need for these officers and crewmembers to be present so that MSC may arrange for substitute officers and crewmembers, should such officers and crewmembers be located on a vessel operated by MSC or any affiliated or associated entity thereof. MSC will act in good faith in carrying out the obligations set forth in this paragraph.

12.     Meridian 7 Limited agrees to facilitate interviews of any of its officers or employees at the time such a request is made by the United States. Meridian 7 Limited agrees to assist the United States in effecting proper service of process with respect to any Alleged

Violations, on any officer and employee of Meridian 7 Limited, including when the officer and employee are not in the United States at the time the subpoena is issued, in a manner consistent with U.S. laws and the laws of the foreign country where the individuals and entities are located. Meridian 7 Limited further agrees to cooperate with the United States to arrange for testimony of such officer or employee before a Grand Jury or other judicial or administrative proceeding arising from the Alleged Violations. The United States agrees that Meridian 7 Limited does not exercise complete control over its officers and employees; therefore, Meridian 7 Limited's obligations with respect to such individuals shall include: (i) encouraging the officers and employees to cooperate with the United States in carrying out its investigation and in appearing for their scheduled testimony; (ii) assisting the officers and employees with their travel arrangements; and (iii) refraining from taking any disciplinary measures or initiating legal proceedings or any other retaliatory actions as a result of the officer's or other employee's cooperation with the United States, either now or at any time in the future. The United States agrees that it will provide reasonable notice of its need for these officers and employees. Meridian 7 Limited will act in good faith in carrying out the obligations set forth in this paragraph.

13.     Nothing in this Agreement is to be deemed as binding on non-parties to the agreement. In particular, any and all individual rights of each ship's officer and crewmember who may be served with a grand jury, deposition, or trial subpoena, or material witness warrant, are preserved.

14.     MSC and Meridian 7 Limited agree to accept service of and comply with any and all subpoenas for records issued by the government in a manner consistent with U.S. laws and the laws of the foreign country where the records are located. MSC and Meridian 7 Limited

further agree to provide, upon request, a competent custodian of records during any applicable period of discovery and at any court proceeding, to include grand jury, motions, and trial, to testify as to the authenticity of any records produced pursuant to the subpoena and steps taken to comply with said subpoena. MSC and Meridian 7 Limited will pay for the travel to the United States of the relevant records custodians and instruct those records custodians to cooperate with the United States in carrying out its investigation, and will act in good faith in carrying out this obligation.

15.    MSC and Meridian 7 Limited further agree to cooperate with the government and immediately inform the government of any contraband, including cocaine or other controlled substances, related to the Alleged Violations that is located, revealed or discovered aboard the Defendant Vessel. MSC and Meridian 7 Limited understand that complete cooperation includes the companies disclosing to the government all facts within their knowledge regarding the criminal conduct of its employees, crew, and officers.

16.    The parties agree that the seizure and release of the Defendant Vessel under the terms of this Consent Order do not commence the running of any due process or statutory or regulatory requirements to commence an administrative and/or judicial forfeiture action against the Defendant Vessel.

17.    MSC and Meridian 7 Limited hereby release, hold harmless, and forever discharge the United States of America, U.S. Department of Homeland Security, U.S. Customs and Border Protection, Homeland Security Investigations, and any other federal, state and local law enforcement authority, and their officers, agents, servants and employees, their heirs, successors or assigns, and all law enforcement personnel working with them from any and all actions, causes of action, suits, or proceedings, debt, contracts, judgments, damages, claims

and/or demands whatsoever in law or equity which MSC and Meridian 7 Limited, their successors, or assigns ever had, now have, or any have in the future in connection with the seizure and detention for forfeiture of the Defendant Vessel.

NOW THEREFORE, upon the agreement of the parties, it is hereby ORDERED as follows:

i. The Consent Motion of United States of America to Release Property Subject to Forfeiture is GRANTED;

ii. As security for the release of the Defendant Vessel, MSC shall provide the following: (1) upon execution of this Consent Order, MSC shall remit a lump sum payment to U.S. Customs and Border Protection in the amount of TEN MILLION DOLLARS 00/100 (US$10,000,000.00), to be maintained in a Treasury Suspense Account, where the funds shall remain until such time as a forfeiture order or other order is entered by the Court; and (2) within 48 hours after execution of this Consent Order, MSC shall cause to be filed with U.S. Customs and Border Protection a corporate surety bond issued in form and sufficiency by a certified surety in compliance with Treasury Circular 570 and satisfactory to U.S. Customs and Border Protection in the amount of FORTY MILLION DOLLARS 00/100 (US$40,000,000.00) (hereinafter collectively referred to as "Security"). The surety bond shall reference and incorporate this Consent Order;

iii. As soon as practicable upon the issuance of this Order and receipt of security contemplated under the parties' agreement, the government shall, in accordance with federal law, promptly release the Defendant Vessel to MSC and Meridian 7 Limited;

iv.   Upon release of the Defendant Vessel, pending final disposition of any civil and criminal forfeiture proceedings involving such property, MSC shall maintain and preserve the Defendant Vessel in accordance with flag State and Classification Society requirements, so as to preserve it in at least the same condition as when it arrived at the Port of Philadelphia, Pennsylvania on June 17, 2019, subject to normal wear and tear and depreciation;

v.    MSC shall make, at its expense, all repairs and undertake all maintenance reasonably necessary to assure compliance with this Order. This shall include, but is not limited to, all regularly scheduled maintenance and inspection items specified by the manufacturer, in accordance with flag state and classification society requirements, and under applicable maritime law. All replacements shall be with parts that meet or exceed manufacturer's specifications. MSC shall comply with all international and national licensing and inspection requirements;

vi.   Meridian 7 Limited shall continue to pay in a timely manner any and all payments due to any lender, loan(s) payable, note(s), or similar obligations concerning the Defendant Vessel so long as MSC continues to pay hire under the applicable charters, and any other loan(s) payable, note(s), or similar obligations that it is currently obligated to pay concerning the Defendant Vessel, which hire and obligations MSC shall continue to pay in a timely manner. MSC and/or Meridian 7 Limited shall advise counsel for the government in writing within five days after receipt of any notice or claim of default, non-payment, or violation of any loan or note owed on account of, or any action under maritime law, against the Defendant Vessel;

- 8 -

vii.    MSC shall maintain insurance coverage on the Defendant Vessel in accordance with industry standards for a vessel of this type to insure the Defendant Vessel against loss, including but not limited to all insurance coverage required by any lender or applicable law;

viii.   Neither MSC nor Meridian 7 Limited shall allow or permit any encumbrances to be placed upon the Defendant Vessel, other than encumbrances placed prior to the government's seizure of the Defendant Vessel or those incurred in the ordinary course of business, as defined in or judicially interpreted under 46 U.S.C. § 31301(4), without prior written consent of the United States, which shall not be unreasonably withheld;

ix.    MSC and Meridian 7 Limited shall not make any material alterations to the Defendant Vessel, other than such alterations necessary to comply with applicable U.S., international, or flag State requirements, without the express written approval of a representative of U.S. Customs and Border Protection, which approval shall not be unreasonably withheld;

x.    MSC shall report to counsel for the government in writing any material loss or occurrence, including a suspension of class, that is expected to result in the Defendant Vessel being out of service for more than two weeks, within three days of the occurrence;

xi.    MSC shall notify counsel for the government in writing if any other jurisdiction takes action to enforce its own seizure right to the Defendant Vessel, or indicates a possibility or intention that it might take such action, within three days of MSC's knowledge of such occurrence;

xii.   MSC shall operate the vessel in a manner consistent with U.S., international, and flag State requirements;

xiii.  MSC shall not subject the Defendant Vessel to any unusual wear and tear that would diminish the value of the property, but the parties understand that minor damage will occur in the normal course of operations, which will be repaired as required by the Classification Society;

xiv.   In the event that the United States files a civil forfeiture complaint against the Defendant Vessel, or obtains a criminal preliminary order of forfeiture of the Defendant Vessel, for the Alleged Violations or for any violations arising from or relating to any of the facts of the Alleged Violations, MSC and Meridian 7 Limited agree that the Defendant Vessel shall remain subject to the jurisdiction of the courts of the United States for this purpose;

xv.    In the event that the United States obtains a civil forfeiture order or a criminal preliminary order of forfeiture of the Defendant Vessel for the Alleged Violations, or for any violations arising from or relating to any of the facts of the Alleged Violations, MSC and Meridian 7 Limited agree to take all action necessary to permit the United States to take possession of the Defendant Vessel, including but not limited to returning the Defendant Vessel to a port under the jurisdiction of the United States, as designated by U.S. Customs and Border Protection, after the completion of its then current voyage, but not later than 90 days from the date of the order;

xvi.   In the event that the United States obtains a civil or criminal order of forfeiture of the Defendant Vessel for the Alleged Violations, or for any violations arising

from or relating to any of the facts of the Alleged Violations, any decrease in the net value of the Defendant Vessel, other than from normal wear and tear and depreciation, from the date of release to the date of forfeiture shall be paid by MSC from the Security submitted to secure release of the Defendant Vessel. As of the date of this Consent Order, the parties agree that the government has provided a current value of approximately $85 million, subject to a first preferred ship mortgage in the amount of at least $52 million and a further liability of $5.2 million in respect of hedging costs for the first preferred ship mortgage, as of the date of this Consent Order;

xvii. In the event that the Defendant Vessel is encumbered by a lien, or a lien is incurred in the ordinary course of business as defined in or judicially interpreted under 46 U.S.C. § 31301(4), MSC shall make all payments required during the pendency of this forfeiture action. Upon request by government counsel, MSC shall provide documented proof of each such payment;

xviii. Within 48 hours after request by the government, MSC will provide the government with the Defendant Vessel's current position;

xix. In the event the government believes MSC or Meridian 7 Limited have violated any provision of this agreement, the government will notify MSC and Meridian 7 Limited and the parties shall meet and confer within three days. MSC and/or Meridian 7 Limited will have 14 days to cure the breach. Should the parties disagree as to whether a breach occurred and/or appropriate remedy after meeting and conferring, the government may seek a further order of this Court to determine whether MSC or Meridian 7 Limited have breached this agreement and

the appropriate remedy. An appropriate remedy can include, but is not limited to, the payment of funds available through the Security defined in paragraph (ii), above;

xx. Except as provided in this Consent Order, in the event that the United States declines to pursue criminal and civil forfeiture of the Defendant Vessel for the Alleged Violations and for any violations arising from and relating to any of the facts of the Alleged Violations, the U.S. Customs and Border Protection shall release the Security to MSC or Meridian 7 Limited;

xxi. In the event that the United States seeks forfeiture of the Defendant Vessel for the Alleged Violations, or for any violations arising from or relating to any of the facts of the Alleged Violations, and judgment is entered in favor of MSC and Meridian 7 Limited, U.S. Customs and Border Protection shall release the Security to MSC or Meridian 7 Limited to the extent of their interest in the Defendant Vessel as found by the Court;

xxii. Nothing in this Consent Order limits the discretion or ability of the United States to pursue penalties or civil prejudgment remedies against MSC or Meridian 7 Limited under any applicable law;

xxiii. The Court has made no findings on the merits of this litigation;

xxiv. The parties will each bear their own costs and their own attorney's fees in this matter;

xxv. This agreement may be executed in any number of counterparts and by different parties on separate counterparts, and each counterpart shall be deemed to be an

original, and all such counterparts shall together constitute but one and same instrument.

xxvi.    The Clerk of Court shall provide three certified copies of this Order to government counsel; and

xxvii.    This Order shall remain in effect until further order of this Court.

IT IS SO ORDERED this _____ day of July, 2019.


**HONORABLE HARVEY BARTLE III**
**United States District Judge**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**In the Matter of:**       :    **MISCELLANEOUS CASE**

**RESTRAINT OF ONE VESSEL KNOWN**   :
**AS THE "MSC GAYANE"**

         :    **No. 19-MC-_____**

## CONSENT MOTION OF UNITED STATES OF AMERICA
## TO RESTRAIN PROPERTY SUBJECT TO FORFEITURE

The United States of America, by its attorneys, William M. McSwain, United

States Attorney for the Eastern District of Pennsylvania, and Sarah L. Grieb, Joseph F. Minni,

and Michael S. Macko, Assistant United States Attorneys, and David Weisberg, Special

Assistant United States Attorney, pursuant to 18 U.S.C. § 983(j)(1)(B), requests this Court to

enter a Consent Order pertaining to the seizure, restraint, and release of the Defendant Property,

a vessel known as the "MSC Gayane," pending the filing of a civil forfeiture complaint against

the Defendant Property.

WHEREFORE, for the reasons set forth in the attached Memorandum of Law, the government requests that this Court grant the motion and enter the proposed Consent Order.

Respectfully submitted,

for WILLIAM M. McSWAIN
United States Attorney

SARAH L. GRIEB
Assistant United States Attorney
Chief, Asset Recovery and
Financial Litigation Section

JOSEPH F. MINNI
Assistant United States Attorney
Deputy Chief, Asset Recovery and
Financial Litigation Section

MICHAEL S. MACKO
Assistant United States Attorney

DAVID WEISBERG
Special Assistant United States Attorney

Date: July 12, 2019.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**In the Matter of:**                   :   **MISCELLANEOUS CASE**

**RESTRAINT OF ONE VESSEL KNOWN**   :
**AS THE "MSC GAYANE"**

                                      :   **No. 19-MC-_____**

## MEMORANDUM OF LAW IN SUPPORT OF
## CONSENT MOTION OF UNITED STATES OF AMERICA
## TO RESTRAIN PROPERTY SUBJECT TO FORFEITURE

The United States of America, by its attorneys, submits this memorandum of law

in support of its consent motion to restrain property subject to forfeiture, namely one vessel

known as the MSC Gayane.[1]

## I.    INTRODUCTION

On June 17, 2019, law enforcement agents and officers conducted an enforcement

boarding of the motor vessel known as the "MSC Gayane," at Packer Marine Terminal in

Philadelphia, Pennsylvania. Upon conducting a lawful search of the MSC Gayane, agents and

officers discovered and ultimately seized approximately 19.76 tons of cocaine concealed within

numerous, separate shipping containers. Law enforcement officers arrested several crew

members in connection with the cocaine shipment. The vessel is subject to forfeiture to the

United States as a result of its involvement in this illegal activity. On July 4, 2019, federal law

enforcement officers seized the vessel pursuant to a seizure warrant issued by this Court.

---

[1] The terms of the agreement are set forth in the proposed Consent Order, a fully
executed copy of which is attached as "Exhibit A" to this motion. The government will submit
the original copy of this order to the Court under separate cover.

Pursuant to 18 U.S.C. § 983(j) of the Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 983, *et seq*. ("CAFRA"), the government, operator, and owner of the vessel have agreed to a proposed Consent Order to release the vessel subject to various terms and conditions. These terms and conditions generally ensure that the vessel will remain within the Court's jurisdiction for purposes of civil or criminal judicial forfeiture proceedings that the government may initiate against the vessel.

## II.    STATEMENT OF FACTS

On June 17, 2019, agents and officers from Homeland Security Investigations, U.S. Customs and Border Protection, United States Coast Guard, Pennsylvania State Police, Delaware State Police, Philadelphia Police Department, and others conducted an enforcement boarding of the motor vessel known as the "MSC Gayane," Call Sign Number D50Z5, IMO Number 9770763 ("Defendant Vessel"), at Packer Marine Terminal in Philadelphia, Pennsylvania. The Defendant Vessel arrived in Philadelphia on the morning of June 17, 2019, from Freeport, Bahamas, laden with commercial cargo, destined for the United States and elsewhere. Upon conducting a lawful search of the Defendant Vessel, agents and officers discovered and ultimately seized approximately 20 tons of cocaine concealed within numerous, separate shipping containers.

The Defendant Vessel is approximately 1,000 feet in length, and it can carry at any given time thousands of cargo containers. The Defendant Vessel was built in January 2018 and is worth approximately $85 million, excluding liens and other encumbrances. Meridian 7 Limited ("Meridian 7") is a company registered in Bermuda, located at Canon's Court, 22 Victoria Street, Hamilton HM12, Bermuda. At all relevant times, Meridian 7 is and was the registered owner of the Defendant Vessel. Meridian 7 has bareboat chartered (on a non-

- 2 -

operating finance lease basis) the operation and management of the Defendant Vessel with the benefit of a purchase option to Conglomerate Maritime Limited.

MSC Mediterranean Shipping Company S.A. ("MSC- SA") is a foreign company with offices and a place of business at 12-14 Chemin Rieu, 1208- Geneva, Switzerland. MSC-SA is and was at all relevant times the time charterer and commercial operator of the Defendant Vessel under applicable United States law. MSC Mediterranean Shipping Company USA Inc. ("MSC-USA") is a U.S. corporation with offices in New York and South Carolina. MSC-USA is and was at all relevant times the U.S.-based ship and commercial agent for MSC-SA.

Conglomerate Maritime Limited ("CML") is a foreign company with a registered office at Nerine House, St. George's Place, St. Peter Port, Guernsey. CML is and was at all relevant times the bareboat charterer (and thereby the disponent owner) of the Defendant Vessel. CML was responsible for, among other things, the technical operation and management of the Defendant Vessel. Mediterranean Shipping Company S.R.L. ("MSC-SRL") is a foreign company with an office in Sorrento, Italy. MSC Shipmanagement Limited ("MSC-Shipmanagement") is a foreign company with an office in Limassol, Cyprus. MSC-SRL and MSC Shipmanagement are and/or were at all relevant times involved with the technical and crewing management for CML. (MSC-SA, MSC-USA, CML, MSC-SRL, and MSC Shipmanagement collectively hereinafter will be referred to as "MSC").

On June 26, 2019, on the government's application, the court issued a warrant to seize the Defendant Vessel for purposes of forfeiture to the United States pursuant to 19 U.S.C. § 1594(c), 18 U.S.C. § 981(b), 21 U.S.C. § 881(a)(4), and 46 U.S.C. § 70507. On July 4, 2019, officers from U.S. Customs and Border Protection and other law enforcement officials executed the warrant and seized the Defendant Vessel. The government, MSC, and Meridian 7, through

their counsel, have entered into an agreement to release the Defendant Vessel to MSC pending completion of any civil and criminal forfeiture proceedings relating to the Defendant Vessel. The parties have memorialized their agreement in a proposed Consent Order, attached as Exhibit A.

## III.    ARGUMENT

### A.    The Defendant Property Will Be Subject to Forfeiture upon the Filing of a Civil Judicial Forfeiture Complaint.

Based on the seizure of approximately 19.76 tons of cocaine concealed and found in shipping containers on the Defendant Vessel after it had arrived at the Philadelphia port on June 17, 2019, the government submits that the Defendant Vessel was used to transport and facilitate the transportation and possession of illicit controlled substances which had been manufactured, distributed, dispensed, or acquired in violation of 21 U.S.C. §§ 841 and 846, was used to commit, or to facilitate the commission of an offense under 46 U.S.C. § 70503, and represents a conveyance used as a common carrier which had prohibited merchandise on board. The government therefore submits that the Defendant Vessel was subject to seizure and is subject to forfeiture to the United States, pursuant to 19 U.S.C. § 1594(c), 18 U.S.C. § 981(b), 21 U.S.C. § 881(a)(4), and 46 U.S.C. § 70507.

First, forfeiture is authorized under the customs laws pursuant to 19 U.S.C. § 1594, which provides, in part:

**§ 1594. Seizure of conveyances**

**(c) Prohibited merchandise on conveyance**

If any merchandise the importation of which is prohibited is found to be, or to have been –

(1) on board a conveyance used as a common carrier in the transaction of business as a common carrier in one or more packages or containers –

(A) that are not manifested (or not shown on bills of lading or airway bills); or

(B) whose marks, numbers, weight or quantities disagree with the manifest (or with the bills of lading or airway bills); or

(2) concealed in or on such a conveyance, but not in the cargo;

the conveyance may be seized, and after investigation, forfeited unless it is established that neither the owner or operator, master, pilot, nor any other employee responsible for maintaining and insuring the accuracy of the cargo manifest knew, or by the exercise of the highest degree of care and diligence could have known, that such merchandise was on board.

Second, forfeiture also is authorized under the United States shipping laws, in particular, 46 U.S.C. § 70507, which provides:

### § 70507. Forfeitures

(a) In general.—Property described in section 511(a) of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 881(a)) that is used or intended for use to commit, or to facilitate the commission of, an offense under section 70503 or 70508 of this title may be seized and forfeited in the same manner that similar property may be seized and forfeited under section 511 of that Act (21 U.S.C. 881).

46 U.S.C. § 70503, in turn, sets forth the prohibited acts that would provide a basis for forfeiture. That statute provides, in part:

### § 70503. Prohibited acts

(a) Prohibitions.—While on board a covered vessel, an individual may not knowingly or intentionally—

(1) manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance . . . .

Lastly, 21 U.S.C. § 881 authorizes the civil forfeiture of property associated with violations under the federal narcotics laws. That section provides, in part:

**§ 881. Forfeitures**

**(a) Subject property**.

The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this subchapter. . . .

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1). . .

**B.    The Authority to Issue of a Pre-Complaint Restraining Order is Governed by Statute**.

As noted above, MSC and Meridian 7 seek the release of the Defendant Vessel prior to the government initiating civil or criminal judicial forfeiture proceedings. They allege that retention of the Defendant Vessel pending forfeiture would result in, among other things, extreme commercial prejudice and other hardship to MSC and Meridian 7. The parties have entered into a proposed agreement, the terms of which are set forth in the attached proposed Consent Order, in which the government will release the Defendant Vessel on certain terms and conditions approved by this Court.

The forfeiture laws authorize the court to enter a restraining order permitting the release of property subject to forfeiture prior to the commencement of a judicial forfeiture proceeding. Upon a showing of probable cause, the court is authorized to enter a restraining order or injunction "or take any other action to preserve the availability" of property subject to forfeiture. *See* 18 U.S.C. § 983(j). *See also United States v. Monsanto*, 491 U.S. 600, 615-16 (1989) (standard for issuing a restraining order is probable cause); *United States v. Real Property located at 1407 N. Collins Street, Arlington, TX*, 901 F.3d 268 (5th Cir. 2018) (government may

restrain property prior to trial when there is probable cause to believe the property is

forfeitable).[2]

> In a civil forfeiture action, 18 U.S.C. § 983(j) provides:
>
>> Upon application of the United States, the court may enter a restraining order or injunction, require the execution of satisfactory performance bonds, create receiverships, appoint conservators, custodians, appraisers, accountants, or trustees, or take any other action to seize, secure, maintain, or preserve the availability of property subject to civil forfeiture.

18 U.S.C. § 983(j)(1). Under Section 983(j)(2), the Court also may issue an order prior to the

commencement of a forfeiture action, after notice to interested parties and an opportunity for a

hearing. The court may issue a pre-complaint restraining order or injunction upon a finding that:

> (1) there is a substantial probability that the United States will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court, or otherwise made unavailable for forfeiture; and
>
> (2) the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered.

*Id.* These orders may not exceed 90 days unless "extended by the court for good cause shown, or

unless a complaint described in paragraph (1)(A) has been filed." 18 U.S.C. § 983(j)(2).

### C. This Court Should Enter the Proposed Consent Order for the Release of the Defendant Vessel Based on the Agreement of the Parties.

The government, MSC, and Meridian 7 have agreed to release the Defendant

Vessel pending the initiation of a civil or criminal forfeiture proceeding to forfeit the vessel.

---

[2] The statutory scheme for the restraint of property in a civil forfeiture action parallels the scheme of the statutory scheme for the pretrial restraint of property for criminal forfeiture. *Compare* 18 U.S.C. § 983(j) with 21 U.S.C. § 853(e). The ability of the Court to impose restraints against persons to prevent the dissipation or removal of a defendant's assets prior to the resolution of criminal forfeiture proceedings is well-established. *See Monsanto*, 491 U.S. at 612-14 (permitting pretrial restraint of assets intended to be used for attorney's fees).

Counsel for the parties have engaged in lengthy negotiations concerning the specific terms upon which the government will release the Defendant Vessel and to ensure the availability of the Defendant Vessel in the event it is subject to forfeiture. The terms of the agreement are set forth in the proposed Consent Order attached to this motion.

The terms of the agreement can be summarized as follows: The government has agreed to release the Defendant Vessel upon MSC posting as security (1) $10 million in funds that are to be held on deposit in the U.S. Treasury Forfeiture Suspense Account and (2) a surety bond in the amount of $40 million. While the agreement provides that the Defendant Vessel, will be released from its current location, the Defendant Vessel will remain available and therefore subject to the Court's jurisdiction. The agreement places certain obligations on the MSC companies and Meridian 7 to cooperate with the government in this matter. In the event the Defendant Vessel is subject to a forfeiture, MSC and Meridian 7 will return it to a port under the jurisdiction of the United States within 90 days of the order. MSC and Meridian 7 also will properly maintain and insure the Defendant Vessel, and remain current on any obligations regarding the operation of the Defendant Vessel. In the event of a breach or violations of the agreement before the entry of a forfeiture order, after consultation among the parties, the government may seek an appropriate remedy from this Court including seeking payment against the security posted for the release of the Defendant Vessel.

**D.      The Waiver of the 90-Day Requirement for the Consent Order.**

Title 18 U.S.C. § 983(j)(2) provides that a pre-complaint restraining order may not exceed 90 days, unless "extended by the court for good cause shown, or unless a complaint described in paragraph (1)(A) has been filed." Under the proposed Consent Order, the parties

have agreed to waive this requirement. In this regard, the parties have agreed that the proposed order "shall remain in effect until further order of this Court."

There is good cause to waive this requirement here. The government recently commenced its investigation in this matter and its investigation is ongoing. The government seized the Defendant Vessel approximately one week ago, on July 4, 2019. The Defendant Vessel, a large container ship, travels world-wide with large amounts of cargo. MSC and Meridian 7 allege that retention of the Defendant Vessel pending forfeiture would result in, among other things, extreme commercial prejudice and other hardship. There are substantial logistical considerations involved with returning and securing the Defendant Vessel for forfeiture proceedings. MSC and Meridian 7 have posted as security collateral sufficient to the government in the event that of a violation or breach of the proposed Consent Order.

## IV.    CONCLUSION

The government submits that the proposed Consent Order is necessary and appropriate under the circumstances. The order provides for the posting of a satisfactory performance bond and cash, as well as other agreed-upon conditions, to secure, maintain, and preserve the availability of the Defendant Vessel in the event of forfeiture. Entry of the proposed order also will eliminate any extreme commercial prejudice and other hardship alleged by MSC and Meridian 7. The order also will avoid the government from incurring substantial fees, costs, and other expenses associated with its retention of the Defendant Vessel pending the

commencement of forfeiture proceedings. For these reasons, the government requests that this

Court grant the motion and enter the proposed Order.

Respectfully submitted,

for WILLIAM M. McSWAIN
United States Attorney

SARAH L. GRIEB
Assistant United States Attorney
Chief, Asset Recovery and
Financial Litigation Section

JOSEPH F. MINNI
Assistant United States Attorney
Deputy Chief, Asset Recovery and
Financial Litigation Section

MICHAEL S. MACKO
Assistant United States Attorney

DAVID WEISBERG
Special Assistant United States Attorney

Date: July 12 , 2019.

Exhibit – A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**In the matter of:**

**: MISCELLANEOUS CASE**

**RESTRAINT OF ONE VESSEL KNOWN : AS THE "MSC GAYANE"**

**: No. 19-MC-_____**

## CONSENT ORDER

This matter having come before the Court on the uncontested Motion of the United States (also referred to herein as the "government") to release property subject to alleged forfeiture, namely, one vessel known as the "MSC Gayane," the Court finds the following:

1.    The government alleges that on June 17, 2019, agents and officers from Homeland Security Investigations, U.S. Customs and Border Protection, United States Coast Guard, Pennsylvania State Police, Delaware State Police, Philadelphia Police Department, and others, conducted an enforcement boarding of the motor vessel known as the "MSC Gayane," Call Sign Number D50Z5, IMO Number 9770763 ("Defendant Vessel"), at Packer Marine Terminal in Philadelphia, Pennsylvania. The Defendant Vessel arrived in Philadelphia on the morning of June 17, 2019, from Freeport, Bahamas, laden with commercial cargo, destined for the United States and elsewhere. The government alleges that, upon conducting a lawful search of the Defendant Vessel, agents and officers discovered and ultimately seized approximately 19.76 tons of cocaine concealed within numerous, separate shipping containers.

2.    The government alleges that there is probable cause to believe that the Defendant Vessel was used to transport and facilitate the transportation and possession of illicit controlled substances which had been manufactured, distributed, dispensed, or acquired in violation of 21

U.S.C. §§ 841 and 846, was used to commit, or to facilitate the commission of an offense under 46 U.S.C. § 70503, and represents a conveyance used as a common carrier which had prohibited merchandise on board ("Alleged Violations").

3.     The government alleges that Defendant Vessel is therefore subject to seizure and forfeiture pursuant to 19 U.S.C. § 1594(c), 18 U.S.C. § 981(b), 21 U.S.C. § 881(a)(4), and 46 U.S.C. § 70507.

4.     On July 4, 2019, the U.S. Customs and Border Protection executed a warrant to seize the Defendant Vessel for forfeiture ("Seizure Warrant").

5.     The government further alleges that the Court is authorized to enter a restraining order or protective order pursuant to 18 U.S.C. § 983(j), because the Defendant Vessel is alleged to be subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(4), and 46 U.S.C. § 70507.

6.     MSC Mediterranean Shipping Company S.A., a foreign company, with offices and a place of business at 12-14 Chemin Rieu, 1208- Geneva, Switzerland, is and was at all relevant times the time charterer and commercial operator of the Defendant Vessel under applicable United States law. MSC Mediterranean Shipping Company USA Inc., a U.S. corporation with offices in New York and South Carolina, is and was at all relevant times the U.S.-based ship and commercial agent for MSC Mediterranean Shipping Company S.A.

7.     Conglomerate Maritime Limited, a foreign company, with a registered office at Nerine House, St. George's Place, St. Peter Port, Guernsey, is and was at all relevant times the bareboat charterer (and thereby the disponent owner) of the Defendant Vessel responsible for, among other things, the technical operation and management of the Defendant Vessel. Mediterranean Shipping Company S.R.L., a foreign company with an office in Sorrento, Italy,

and MSC Shipmanagement Limited, a foreign company with an office in Limassol, Cyprus, are and/or were at all relevant times involved with the technical and crewing management for Conglomerate Maritime Limited.

8.     Meridian 7 Limited, a company registered in Bermuda, located at Canon's Court, 22 Victoria Street, Hamilton HM12, Bermuda, is and was at all relevant times the registered owner of the Defendant Vessel, which it has bareboat chartered (on a non-operating finance lease basis) with the benefit of a purchase option to Conglomerate Maritime Limited.

9.     MSC Mediterranean Shipping Company S.A., Conglomerate Maritime Limited, and Meridian 7 Limited seek the release of the Defendant Vessel alleging that retention of the property pending forfeiture would result in, among other things, extreme commercial prejudice and other hardship to MSC and Meridian 7 Limited. MSC Mediterranean Shipping Company S.A., MSC Mediterranean Shipping Company USA Inc., Conglomerate Maritime Limited, Mediterranean Shipping Company S.R.L., and MSC Shipmanagement Limited, hereinafter will be referred to as "MSC" to the extent that any particular company is relevant to the provision.

10.     The government, MSC, and Meridian 7 Limited, through their authorized counsel, have agreed to release the Defendant Vessel to MSC pending completion of any civil and criminal forfeiture proceedings relating to the Defendant Vessel in accordance with the below terms and conditions. Unless otherwise provided in this Consent Order, MSC and Meridian 7 Limited reserve any and all rights, defenses, and remedies with respect to any such proceeding(s).

11.     MSC agrees to facilitate interviews of any officer or crewmember of the Defendant Vessel and of any officer or employee of MSC at the time such a request is made by the United States. MSC agrees to assist the United States in effecting proper service of process

- 3 -

with respect to any Alleged Violations, on any officer, crewmember, and employee of MSC, including when the officer, crewmember, and employee are not in the United States at the time the subpoena is issued, in a manner consistent with U.S. laws and the laws of the foreign country where the individuals and entities are located. MSC further agrees to cooperate with the United States to arrange for testimony of such officer, crewmember, or employee before a Grand Jury or other judicial or administrative proceeding arising from the Alleged Violations. The United States agrees that MSC does not exercise complete control over its officers, crewmembers, and employees; therefore, MSC's obligations with respect to such individuals shall include: (i) encouraging the officers, crewmembers, and employees to cooperate with the United States in carrying out its investigation and in appearing for their scheduled testimony; (ii) assisting the officers, crewmembers, and employees with their travel arrangements; and (iii) refraining from taking any disciplinary measures or initiating legal proceedings or any other retaliatory actions as a result of the officer's or crewmember's or other employee's cooperation with the United States, either now or at any time in the future. MSC further will make reasonable efforts to prevent third parties, namely manning or other crewing agencies, from doing the same. The United States agrees that it will provide reasonable notice of its need for these officers and crewmembers to be present so that MSC may arrange for substitute officers and crewmembers, should such officers and crewmembers be located on a vessel operated by MSC or any affiliated or associated entity thereof. MSC will act in good faith in carrying out the obligations set forth in this paragraph.

12.    Meridian 7 Limited agrees to facilitate interviews of any of its officers or employees at the time such a request is made by the United States. Meridian 7 Limited agrees to assist the United States in effecting proper service of process with respect to any Alleged

Violations, on any officer and employee of Meridian 7 Limited, including when the officer and employee are not in the United States at the time the subpoena is issued, in a manner consistent with U.S. laws and the laws of the foreign country where the individuals and entities are located. Meridian 7 Limited further agrees to cooperate with the United States to arrange for testimony of such officer or employee before a Grand Jury or other judicial or administrative proceeding arising from the Alleged Violations. The United States agrees that Meridian 7 Limited does not exercise complete control over its officers and employees; therefore, Meridian 7 Limited's obligations with respect to such individuals shall include: (i) encouraging the officers and employees to cooperate with the United States in carrying out its investigation and in appearing for their scheduled testimony; (ii) assisting the officers and employees with their travel arrangements; and (iii) refraining from taking any disciplinary measures or initiating legal proceedings or any other retaliatory actions as a result of the officer's or other employee's cooperation with the United States, either now or at any time in the future. The United States agrees that it will provide reasonable notice of its need for these officers and employees. Meridian 7 Limited will act in good faith in carrying out the obligations set forth in this paragraph.

13. Nothing in this Agreement is to be deemed as binding on non-parties to the agreement. In particular, any and all individual rights of each ship's officer and crewmember who may be served with a grand jury, deposition, or trial subpoena, or material witness warrant, are preserved.

14. MSC and Meridian 7 Limited agree to accept service of and comply with any and all subpoenas for records issued by the government in a manner consistent with U.S. laws and the laws of the foreign country where the records are located. MSC and Meridian 7 Limited

further agree to provide, upon request, a competent custodian of records during any applicable period of discovery and at any court proceeding, to include grand jury, motions, and trial, to testify as to the authenticity of any records produced pursuant to the subpoena and steps taken to comply with said subpoena. MSC and Meridian 7 Limited will pay for the travel to the United States of the relevant records custodians and instruct those records custodians to cooperate with the United States in carrying out its investigation, and will act in good faith in carrying out this obligation.

15.     MSC and Meridian 7 Limited further agree to cooperate with the government and immediately inform the government of any contraband, including cocaine or other controlled substances, related to the Alleged Violations that is located, revealed or discovered aboard the Defendant Vessel. MSC and Meridian 7 Limited understand that complete cooperation includes the companies disclosing to the government all facts within their knowledge regarding the criminal conduct of its employees, crew, and officers.

16.     The parties agree that the seizure and release of the Defendant Vessel under the terms of this Consent Order do not commence the running of any due process or statutory or regulatory requirements to commence an administrative and/or judicial forfeiture action against the Defendant Vessel.

17.     MSC and Meridian 7 Limited hereby release, hold harmless, and forever discharge the United States of America, U.S. Department of Homeland Security, U.S. Customs and Border Protection, Homeland Security Investigations, and any other federal, state and local law enforcement authority, and their officers, agents, servants and employees, their heirs, successors or assigns, and all law enforcement personnel working with them from any and all actions, causes of action, suits, or proceedings, debt, contracts, judgments, damages, claims

- 6 -

and/or demands whatsoever in law or equity which MSC and Meridian 7 Limited, their successors, or assigns ever had, now have, or any have in the future in connection with the seizure and detention for forfeiture of the Defendant Vessel.

NOW THEREFORE, upon the agreement of the parties, it is hereby ORDERED as follows:

      i.     The Consent Motion of United States of America to Release Property Subject to Forfeiture is GRANTED;

     ii.    As security for the release of the Defendant Vessel, MSC shall provide the following: (1) upon execution of this Consent Order, MSC shall remit a lump sum payment to U.S. Customs and Border Protection in the amount of TEN MILLION DOLLARS 00/100 (US$10,000,000.00), to be maintained in a Treasury Suspense Account, where the funds shall remain until such time as a forfeiture order or other order is entered by the Court; and (2) within 48 hours after execution of this Consent Order, MSC shall cause to be filed with U.S. Customs and Border Protection a corporate surety bond issued in form and sufficiency by a certified surety in compliance with Treasury Circular 570 and satisfactory to U.S. Customs and Border Protection in the amount of FORTY MILLION DOLLARS 00/100 (US$40,000,000.00) (hereinafter collectively referred to as "Security"). The surety bond shall reference and incorporate this Consent Order;

   iii.   As soon as practicable upon the issuance of this Order and receipt of security contemplated under the parties' agreement, the government shall, in accordance with federal law, promptly release the Defendant Vessel to MSC and Meridian 7 Limited;

iv.  Upon release of the Defendant Vessel, pending final disposition of any civil and criminal forfeiture proceedings involving such property, MSC shall maintain and preserve the Defendant Vessel in accordance with flag State and Classification Society requirements, so as to preserve it in at least the same condition as when it arrived at the Port of Philadelphia, Pennsylvania on June 17, 2019, subject to normal wear and tear and depreciation;

v.  MSC shall make, at its expense, all repairs and undertake all maintenance reasonably necessary to assure compliance with this Order. This shall include, but is not limited to, all regularly scheduled maintenance and inspection items specified by the manufacturer, in accordance with flag state and classification society requirements, and under applicable maritime law. All replacements shall be with parts that meet or exceed manufacturer's specifications. MSC shall comply with all international and national licensing and inspection requirements;

vi.  Meridian 7 Limited shall continue to pay in a timely manner any and all payments due to any lender, loan(s) payable, note(s), or similar obligations concerning the Defendant Vessel so long as MSC continues to pay hire under the applicable charters, and any other loan(s) payable, note(s), or similar obligations that it is currently obligated to pay concerning the Defendant Vessel, which hire and obligations MSC shall continue to pay in a timely manner. MSC and/or Meridian 7 Limited shall advise counsel for the government in writing within five days after receipt of any notice or claim of default, non-payment, or violation of any loan or note owed on account of, or any action under maritime law, against the Defendant Vessel;

- 8 -

vii.   MSC shall maintain insurance coverage on the Defendant Vessel in accordance with industry standards for a vessel of this type to insure the Defendant Vessel against loss, including but not limited to all insurance coverage required by any lender or applicable law;

viii.  Neither MSC nor Meridian 7 Limited shall allow or permit any encumbrances to be placed upon the Defendant Vessel, other than encumbrances placed prior to the government's seizure of the Defendant Vessel or those incurred in the ordinary course of business, as defined in or judicially interpreted under 46 U.S.C. § 31301(4), without prior written consent of the United States, which shall not be unreasonably withheld;

ix.    MSC and Meridian 7 Limited shall not make any material alterations to the Defendant Vessel, other than such alterations necessary to comply with applicable U.S., international, or flag State requirements, without the express written approval of a representative of U.S. Customs and Border Protection, which approval shall not be unreasonably withheld;

x.     MSC shall report to counsel for the government in writing any material loss or occurrence, including a suspension of class, that is expected to result in the Defendant Vessel being out of service for more than two weeks, within three days of the occurrence;

xi.    MSC shall notify counsel for the government in writing if any other jurisdiction takes action to enforce its own seizure right to the Defendant Vessel, or indicates a possibility or intention that it might take such action, within three days of MSC's knowledge of such occurrence;

xii.  MSC shall operate the vessel in a manner consistent with U.S., international, and flag State requirements;

xiii.  MSC shall not subject the Defendant Vessel to any unusual wear and tear that would diminish the value of the property, but the parties understand that minor damage will occur in the normal course of operations, which will be repaired as required by the Classification Society;

xiv.  In the event that the United States files a civil forfeiture complaint against the Defendant Vessel, or obtains a criminal preliminary order of forfeiture of the Defendant Vessel, for the Alleged Violations or for any violations arising from or relating to any of the facts of the Alleged Violations, MSC and Meridian 7 Limited agree that the Defendant Vessel shall remain subject to the jurisdiction of the courts of the United States for this purpose;

xv.  In the event that the United States obtains a civil forfeiture order or a criminal preliminary order of forfeiture of the Defendant Vessel for the Alleged Violations, or for any violations arising from or relating to any of the facts of the Alleged Violations, MSC and Meridian 7 Limited agree to take all action necessary to permit the United States to take possession of the Defendant Vessel, including but not limited to returning the Defendant Vessel to a port under the jurisdiction of the United States, as designated by U.S. Customs and Border Protection, after the completion of its then current voyage, but not later than 90 days from the date of the order;

xvi.  In the event that the United States obtains a civil or criminal order of forfeiture of the Defendant Vessel for the Alleged Violations, or for any violations arising

from or relating to any of the facts of the Alleged Violations, any decrease in the net value of the Defendant Vessel, other than from normal wear and tear and depreciation, from the date of release to the date of forfeiture shall be paid by MSC from the Security submitted to secure release of the Defendant Vessel. As of the date of this Consent Order, the parties agree that the government has provided a current value of approximately $85 million, subject to a first preferred ship mortgage in the amount of at least $52 million and a further liability of $5.2 million in respect of hedging costs for the first preferred ship mortgage, as of the date of this Consent Order;

xvii.   In the event that the Defendant Vessel is encumbered by a lien, or a lien is incurred in the ordinary course of business as defined in or judicially interpreted under 46 U.S.C. § 31301(4), MSC shall make all payments required during the pendency of this forfeiture action. Upon request by government counsel, MSC shall provide documented proof of each such payment;

xviii.  Within 48 hours after request by the government, MSC will provide the government with the Defendant Vessel's current position;

xix.    In the event the government believes MSC or Meridian 7 Limited have violated any provision of this agreement, the government will notify MSC and Meridian 7 Limited and the parties shall meet and confer within three days. MSC and/or Meridian 7 Limited will have 14 days to cure the breach. Should the parties disagree as to whether a breach occurred and/or appropriate remedy after meeting and conferring, the government may seek a further order of this Court to determine whether MSC or Meridian 7 Limited have breached this agreement and

- 11 -

the appropriate remedy. An appropriate remedy can include, but is not limited to, the payment of funds available through the Security defined in paragraph (ii), above;

xx. Except as provided in this Consent Order, in the event that the United States declines to pursue criminal and civil forfeiture of the Defendant Vessel for the Alleged Violations and for any violations arising from and relating to any of the facts of the Alleged Violations, the U.S. Customs and Border Protection shall release the Security to MSC or Meridian 7 Limited;

xxi. In the event that the United States seeks forfeiture of the Defendant Vessel for the Alleged Violations, or for any violations arising from or relating to any of the facts of the Alleged Violations, and judgment is entered in favor of MSC and Meridian 7 Limited, U.S. Customs and Border Protection shall release the Security to MSC or Meridian 7 Limited to the extent of their interest in the Defendant Vessel as found by the Court;

xxii. Nothing in this Consent Order limits the discretion or ability of the United States to pursue penalties or civil prejudgment remedies against MSC or Meridian 7 Limited under any applicable law;

xxiii. The Court has made no findings on the merits of this litigation;

xxiv. The parties will each bear their own costs and their own attorney's fees in this matter;

xxv. This agreement may be executed in any number of counterparts and by different parties on separate counterparts, and each counterpart shall be deemed to be an

original, and all such counterparts shall together constitute but one and same instrument.

xxvi.    The Clerk of Court shall provide three certified copies of this Order to government counsel; and

xxvii.   This Order shall remain in effect until further order of this Court.

IT IS SO ORDERED this _____ day of _____, 2019.


                              _____

**HONORABLE HARVEY BARTLE III**
**United States District Judge**

WE CONSENT TO ENTRY OF THIS ORDER:


WILLIAM M. McSWAIN
United States Attorney

July 11, 2019
Date


SARAH L. GRIEB
Assistant United States Attorney
Chief, Asset Recovery and
Financial Litigation Section

July 11, 2019
Date

JOSEPH F. MINNI
Assistant United States Attorney
Deputy Chief, Asset Recovery and
Financial Litigation Section

MICHAEL MACKO
Assistant United States Attorney

DAVID WEISBERG
Special Assistant United States Attorney


DANIEL FITZGERALD, Esquire
Freehill Hogan & Mahar LLP
Counsel for MSC Mediterranean Shipping
Company S.A., Conglomerate Maritime,
MSC Mediterranean Shipping Company USA
Inc., Conglomerate Maritime Limited,
Mediterranean Shipping Company S.R.L.,
and MSC Shipmanagement Limited,

Date:

JOSEPH G. POLUKA, Esquire
Blank Rome LLP


NEIL QUARTARO
Watson Farley & Williams LP
Counsel for Meridian 7 Limited

Date:

WE CONSENT TO ENTRY OF THIS ORDER:

_____     _____
WILLIAM M. McSWAIN                   Date
United States Attorney


_____     _____
SARAH L. GRIEB                       Date
Assistant United States Attorney
Chief, Asset Recovery and
Financial Litigation Section

JOSEPH F. MINNI
Assistant United States Attorney
Deputy Chief, Asset Recovery and
Financial Litigation Section

MICHAEL MACKO
Assistant United States Attorney

DAVID WEISBERG
Special Assistant United States Attorney

*Daniel Fitzgerald*                  7/11/2019
_____      _____
DANIEL FITZGERALD, Esquire           Date:
Freehill Hogan & Mahar LLP
Counsel for MSC Mediterranean Shipping
Company S.A., Conglomerate Maritime,
MSC Mediterranean Shipping Company USA
Inc., Conglomerate Maritime Limited,
Mediterranean Shipping Company S.R.L.,
and MSC Shipmanagement Limited,

JOSEPH G. POLUKA, Esquire
Blank Rome LLP


_____     _____
NEIL QUARTARO                        Date:
Watson Farley & Williams LP
Counsel for Meridian 7 Limited

- 14 -

WE CONSENT TO ENTRY OF THIS ORDER:


_____          _____
WILLIAM M. McSWAIN                    Date
United States Attorney


_____          _____
SARAH L. GRIEB                        Date
Assistant United States Attorney
Chief, Asset Recovery and
Financial Litigation Section

JOSEPH F. MINNI
Assistant United States Attorney
Deputy Chief, Asset Recovery and
Financial Litigation Section

MICHAEL MACKO
Assistant United States Attorney

DAVID WEISBERG
Special Assistant United States Attorney


_____          _____
DANIEL FITZGERALD, Esquire            Date:
Freehill Hogan & Mahar LLP
Counsel for MSC Mediterranean Shipping
Company S.A., Conglomerate Maritime,
MSC Mediterranean Shipping Company USA
Inc., Conglomerate Maritime Limited,
Mediterranean Shipping Company S.R.L.,
and MSC Shipmanagement Limited,

JOSEPH G. POLUKA, Esquire
Blank Rome LLP

_____          _____
NEIL QUARTARO                         Date:  July 11, 2019
Watson Farley & Williams LP
Counsel for Meridian 7 Limited

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that a true and correct copy of the CONSENT

MOTION OF UNITED STATES OF AMERICA TO RESTRAIN PROPERTY SUBJECT TO

FORFEITURE and proposed order were served by electronic mail upon the following:

> Daniel Fitzgerald, Esquire
> FREEHILL HOGAN & MAHAR LLP
>
> Neil Quartaro, Esquire
> WATSON FARLEY & WILLIAMS LLP
>
> Joseph G. Poluka, Esquire
> BLANK ROME LLP
>
> Jeanne M. Grasso, Esquire
> BLANK ROME LLP

JOSEPH F. MINNI
Assistant United States Attorney

Date: July 12, 2019.